UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL ALEX PUSHKAROW,<br><br>Plaintiff,<br><br>v.<br><br>ROSEMARY NDOH, et al.,<br><br>Defendants. | Case No. 20-cv-06282-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Docket No. 1 |

Petitioner Michael Alex Pushkarow has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Mr. Pushkarow asserts two claims: (1) the testimony of a DNA expert at his jury trial violated his rights as protected by the Confrontation Clause of the Sixth Amendment and (2) there was insufficient evidence to support his convictions for burglary. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** the petition for relief.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Following a jury trial, Mr. Pushkarow was found guilty of two counts of first-degree burglary, one count of misdemeanor shoplifting, and one count of forgery. He was sentenced to seven years of imprisonment. *See* Pet. at 1-2.

The facts underlying the convictions are described in the state appellate court decision denying Mr. Pushkarow's direct appeal. Those facts are briefly described below.

A.      Burglaries

Two burglaries took place in Napa in the February-April 2013 period. The first burglary was of the Boyles' residence, located on Wooden Valley Road; the second burglary was of the

Clevelands' residence, located on Big Ranch Road.

       1.     Wooden Valley Road Burglary

      Regarding the Wooden Valley Road burglary, the Boyles were away for a vacation.  The burglary was discovered by individuals who worked for the Boyles.  The individuals noted, *inter alia*, that a window to the garage had been broken as well as a window from a door to the house.  When a police officer arrived, he investigated and found a piece of a blue rubber glove on the garage floor beneath the broken window.  He also found more pieces of blue rubber gloves in in the house.

      When the Boyles returned home, they found that many items were missing, including a Mini Cooper.  The Mini Cooper was subsequently located in the Sacramento area with an individual named Timothy Miller inside.  Mr. Miller was arrested for possession of the stolen car.

      Thereafter, the police obtained a DNA swab from Mr. Miller.  The police sent the swab and the glove pieces found at the burglary to Orchid Cellmark Forensics ("Cellmark") in Dallas, Texas, for testing.  Mr. Miller's DNA was not a match.

      Approximately a month after the burglary, Mr. Boyle discovered that there had been fraudulent activity on his checking account.  Through his bank statements, Mr. Boyle determined that three checks had been written neither by him or Mrs. Boyle.  Two of the checks were written to CVS Pharmacy; the third was written to a Safeway in American Canyon.  Safeway informed the police that the check to Safeway had been used to purchase, *inter alia*, a pack of Marlboro King cigarettes and Dreyers double fudge brownie ice cream.  Safeway also told the police that a club card under the name Antonia Pushkarow was used to purchase the items.

       2.     Big Ranch Road Burglary

      Regarding the Big Ranch Road Burglary, the Clevelands were also away from their home for an extended period of time when the burglary took place.  Mrs. Cleveland discovered the burglary when she returned home.  Many items had been stolen.  When the police investigated, they found a broken glass panel on a breezeway with a rubber adhesive patch over the edge of the broken glass.

      Approximately a week later, the Clevelands informed the police that they had found a blue

nitrile glove inside a box in the breezeway near the broken window.  The police noticed that there was a dot on the interior part of the glove that looked like dried blood.  The police sent the glove to Cellmark for analysis.  Cellmark informed that the police that there was a partial DNA profile from the glove and sent the profile to a law enforcement agency to be entered into the "Combined DNA Identification System."

Subsequently, Mr. Cleveland discovered that his checkbooks had been stolen based on letters he had received letters from collection agencies.  Mr. Cleveland obtained copies of the relevant checks.  One check had been written to CVS, and the other to a Safeway in Healdsburg.  The checks bore the Clevelands' names and their address, but the signatures on the checks were not theirs.  Also, one of the checks had a driver's license number on it that was neither Mr. nor Mrs. Cleveland's, and the other check had a phone number that the Clevelands did not recognize.  Finally, the checks did not list the Clevelands' correct account number (*i.e.*, they had been forged).

The police followed up with the Safeway in Healdsburg and learned that the items purchased at the store included Marlboro King cigarettes and Dreyers double fudge brownie ice cream.  A club card belonging to Antonia Pushkarow was used in conjunction with the purchase.  The police found an address for Ms. Pushkarow in Napa and found that she had a relative – *i.e.*, Mr. Pushkarow – who used her address for his business, All-Temp Heating & Air Conditioning.[1]

The police also followed up with the CVS store and learned that it had surveillance tape of the person making the relevant purchase.  The man had a distinctive hairline and mustache that matched Mr. Pushkarow's description.

Mr. Pushkarow was then arrested.  While he was in custody, Mr. Pushkarow called his girlfriend at the phone number that was written on the check at the Healdsburg Safeway.

B.    DNA Evidence

As indicated above, Cellmark did DNA testing for (1) the glove pieces found at the Boyles' residence on Wooden Valley Road and (2) the glove found at the Clevelands' residence

---

[1] Mrs. Cleveland informed the police that she had previously hired All-Temp to replace the heating and air conditioning at the Clevelands' home.  The Clevelands paid $10,000 for the work but did not pay the remaining $2,000 because they believed that the floors had not been properly cleaned afterward.

United States District Court
Northern District of California

on Big Ranch Road.  At trial, Jill Cramer, a DNA analyst for Cellmark, testified.

Ms. Cramer described the DNA testing process, which consists of multiple steps such as extraction, quantification, amplification, and genetic analysis.  Cellmark has a team approach so that different people were involved in different steps.  However, Ms. Cramer was the only Cellmark employee who testified at Mr. Pushkarow's trial.

For the glove pieces found at the Boyles' residence at Wooden Valley Road, Ms. Cramer did the interpretation at the end of the DNA testing process and determined that the pieces had one common major profile.  She compared the profile to Mr. Miller's DNA and determined that he was not the contributor.

The police obtained a DNA swab from Mr. Pushkarow and sent the sample to Cellmark.  Again, Ms. Cramer did the interpretation at the end of the DNA testing process.  She determined that there was a complete match between Mr. Pushkarow's DNA swab and the DNA from the Wooden Valley Road burglary.  Results were inconclusive, however, as to Mr. Pushkarow's DNA swab and the DNA from the Big Ranch Road burglary.

## II.      **DISCUSSION**

A.      Legal Standard

Mr. Pushkarow's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEPDA").  Under AEPDA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

> The "'contrary to' and 'unreasonable application of' clauses in § 2254(d)(1) are distinct and have separate meanings."  Under the "contrary to" clause of § 2254(d)(1), a federal court may grant relief only when "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a

4

set of materially indistinguishable facts."

Under the "unreasonable application" clause of § 2254(d)(1), "a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." "And an 'unreasonable application of' [the Supreme Court's] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"

*Loher v. Thomas*, 825 F.3d 1103, 1111-12 (9th Cir. 2016).

In the instant case, the state court decision to which the Court applies the above analysis is the decision found at *People v. Pushkarow*, No. A148092, 2019 Cal. App. Unpub. LEXIS 1860 (2019). Both parties agree that this is "the decision of the highest state court to have provided a reasoned decision." *McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015). *See, e.g.*, Traverse at 2) (arguing that "the California Court of Appeal unreasonably concluded that there was no Confrontation Clause [violation]"); Resp. at 6 (arguing to the contrary).[2]

B.   <u>Confrontation Clause Claim</u>

The Sixth Amendment's Confrontation Clause provides in relevant part as follows: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless [1] he was unavailable to testify, and [2] the defendant had had a prior opportunity for cross-examination." *Crawford v. Wash.*, 541 U.S. 36, 53-54 (2004). In the instant case, Mr. Pushkarow argues that Ms. Cramer's testimony at trial violated his rights under the Confrontation Clause because she relied on what other Cellmark employees did and/or said as part of the DNA testing process and none of the those employees testified at trial. *See* Pet. Memo. at 5 (arguing that "Cramer's opinion depended on the

[2] The Court notes that both parties have cited to the state appellate court's decision on direct appeal. Mr. Pushkarow claims that, at the time he filed his direct appeal, he filed a companion state habeas petition. *See* Pet. at 2. Although there is no record of such a petition, or of any ruling by a state court on such a petition, the issues presented in this federal habeas petition were raised in the direct appeal and were addressed by both the state appellate court and the California Supreme Court.

United States District Court
Northern District of California

work of several other live Cellmark analysts who analyzed samples for the presence of blood, extracted DNA from samples, multiplied the tiny samples of DNA to samples sufficiently large to be analyzed, took other steps to create that could be loaded into the machine, and actually loaded the DNA into the machine").

Mr. Pushkarow's argument lacks merit. He relies on a trio of Supreme Court cases – *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); and *Williams v. Illinois*, 567 U.S. 50, 56, 58 (2012) – as well as a California Supreme Court case that analyzed *Williams*, *see People v. Sanchez*, 63 Cal. 4th 665 (2016). But in *Flournoy v. Small*, 681 F.3d 1000 (9th Cir. 2012), the Ninth Circuit expressly rejected a petitioner's claim that his confrontation rights were violated when a forensic analyst testified based on the results of tests performed and reports prepared by other analysts. The court stated: "[T]here was no clearly established federal law, based on decisions of the United States Supreme Court, that held such testimony to violate the Confrontation Clause in circumstances where the testifying witness participated in and reviewed the crime lab's work, even though she did not personally conduct all the testing herself." *Id.* at 1001; *cf. Melendez-Diaz*, 557 U.S. at 311 n.1 (noting that "we do not hold . . . that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."); *Bullcoming*, 564 U.S. at 651 (holding that defendant's right to confrontation violated where the prosecution did not call as a witness the forensic analyst who signed the certification but rather called another analyst who was familiar with the lab's testing procedures but had neither participated in nor observed the test on the defendant's blood sample).

Admittedly, *Flournoy* was decided before *Williams* (a plurality decision), as well as *Sanchez*, in which the California Supreme Court evaluated *Williams*. *See, e.g.*, *Sanchez*, 63 Cal. 4th at 683-84, 695 (acknowledging the plurality decision in *Williams* but evaluating the opinions of the four dissenting justices plus the opinion of Justice Thomas (who concurred with the plurality) to divine what a majority of the Court would hold). But, if anything, *Williams* underscores that there is not clearly established Supreme Court law on the specific issue raised by

United States District Court
Northern District of California

Mr. Pushkarow.  As Justice Breyer noted in his concurrence, neither the plurality nor the dissent answered the following question: "How does the Confrontation Clause apply to the panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians?"  *Williams*, 567 U.S. at 86 (Breyer, J., concurring).  As Justice Breyer put it, "there would seem often to be no logical stopping place between requiring the prosecution to call as a witness one of the laboratory experts who worked on the. matter and requiring the prosecution to call *all* of the laboratory experts who did so."  *Id.* at 89 (Breyer, J., concurring) (emphasis in original).  Notably, post-*Williams*, two circuit courts have pointed out the uncertainty that exists after *Williams* and thus denied habeas relief.  *See Grim v. Fisher*, 816 F.3d 296, 408 (5th Cir. 2016) (noting that the Supreme Court Justices "are not alone in expressing uncertainty about what degree of involvement in the underlying forensic testing and analysis is required of an in-court witness"); *Washington v. Griffin*, 876 F.3d 395, 409 (2d Cir. 2017) (taking note of "the difficulty in identifying a single holding of principle from the several opinions of the fractured *Williams* Court").

In the absence of clearly established law, Mr. Pushkarow's claim under the Confrontation Clause fails.[3]

C.    Due Process Claim

According to Mr. Pushkarow, even if there were no Confrontation Clause violation, he is still entitled to habeas relief for his burglary convictions because the evidence was insufficient to support those convictions.  Mr. Pushkarow asserts: "The only evidence connecting [him] with the burglary of either residence is that his DNA was allegedly found on glove pieces located at the Wooden Valley Road residence," Pet. Mem. at 8, but the "DNA evidence . . . was not sufficient for conviction because it was found on a *movable* object and there was no corroborating evidence from which the trier of fact could reasonably infer that petitioner's fingerprints were impressed on the gloves contemporaneous to the burglary and not before."  Traverse at 3 (emphasis added).  In

---

[3] In his traverse, Mr. Pushkarow criticizes the state appellate court's holding that the out-of-court statements of the analysts (other than Ms. Cramer) were not sufficiently formal to be testimonial in nature.  But again, in the absence of clearly established Supreme Court law, this argument fails.

1   short, Mr. Pushkarow's position is that, "[w]ithout corroborating evidence placing petitioner at the

2   scene of the burglaries, the glove evidence is inadequate."  Traverse at 4.

3        The state appellate court considered and rejected Mr. Pushkarow's contention, noting as

4   follows:

> Defendant claims that the DNA evidence, which he compares to
> fingerprint evidence, is sufficient only if "found [on] an immovable
> object in an area of the burglarized structure that is inaccessible to
> the public."  However, *People v. Huber* (1986) 181 Cal. App. 3d
> 601, on which defendant relies, does not hold such evidence to be
> insufficient under other circumstances.  The glove pieces with
> defendant's DNA found near the apparent entry points of the
> Wooden Valley home sufficiently connect defendant to that
> burglary.  And the glove made of the same material found at the Big
> Ranch Road home tends to connect him to that burglary.  Beyond
> that, both burglaries occurred while the homeowners were away on
> vacation.  Both occurred in rural areas where there was little to no
> contact with neighboring homes.  Both burglaries employed similar
> access points for entry as evidenced by the broken glass at both
> locations.  Both victims had their check books stolen and checks
> from both homes were used by defendant either at a CVS pharmacy
> or Safeway store to purchase similar goods.  Finally, the Clevelands
> had a prior relationship with defendant that did not end amicably.

*Pushkarow*, 2019 Cal. App. Unpub. LEXIS 1860, at *18.

        The state court's decision that the evidence of record was sufficient to support the burglary

convictions is not objectively unreasonable.  The glove pieces were found at the Boyles'

residence.  They had not been left there by the Boyles, and at least one piece was located near the

broken window in the garage.  The glove pieces had Mr. Pushkarow's DNA on them, even though

he had no lawful reason to be in the Boyles' garage or home.  How disposable gloves with Mr.

Pushkarow's DNA could be on the Boyles' property was not explained.  Checks were stolen from

the Boyles and were used at the American Canyon Safeway and at CVS.  The Safeway purchase

included Marlboro Kings and Dreyers double fudge brownie ice cream, and Ms. Pushkarow's club

card was used to make the purchase.  The Big Ranch Road burglary bore similarities to the

Wooden Valley Road burglary – *e.g.*, checks for the Clevelands (albeit these checks were forged)

were used to make purchases at a Safeway and at CVS; the Safeway purchase included Marlboro

Kings and Dreyers double fudge brownie ice cream; and Ms. Pushkarow's club card was used to

make the purchase.  Moreover, one of the checks had a phone number that corresponded to the

number of Mr. Pushkarow's girlfriend.  Finally, the CVS purchase was captured on video, and the individual making the purchase had Mr. Pushkarow's same distinctive hairline and mustache.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Mr. Pushkarow's petition for habeas relief. The Court also declines to issue a certificate of appealability.

The Clerk of the Court is directed to enter a final judgment in accordance with this opinion and close the file in this case.

**IT IS SO ORDERED**.

Dated: March 18, 2021

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California